WILLIAM M. GILLETT, and CHARLES HARRIS, Plaintiffs in Error

*vs.*

JAMES TREGANZA, Defendant in Error.

ERROR TO THE LA FAYETTE CIRCUIT COURT.

To support the action of replevin in the *cepit*, it is necessary for the plaintiff to prove that, at the time of the caption he had the general or a special property in the goods taken, and the right of immediate and exclusive possession.

A conveyance of the right of digging for lead ore on a certain range, " it being a sheet dipping south, and running east and west; and the privilege of following the sheet or crevice in whatever direction it may run," upon a tract of land described, does not create a property or estate in the land ; it is a mere license or privilege to dig and search for the mineral.

·*Semble.* 1st. That such license, on account of its conveying a fixed and determinate right, may be irrevocable, if prosecuted diligently and faithfully. 2nd. That mineral severed from the land by the person holding, and by virtue of the license, vests in and becomes the property of the licensee. But, 3d. That mineral severed from the land by another person not acting under the license, does not vest in such licensee, so as to enable him to recover the same in replevin.

This was an action of replevin brought by the plaintiff below to recover " sixty thousand pounds of lead ore, said ore being unwashed from the dirt dug out and raised therewith, and being what is commonly known and called wash-dirt mineral, and were lying and being," &c., of the value of twelve hundred dollars.

To the declaration filed, the defendants pleaded the general issue, and also several special pleas, that the property in the goods was in one of the defendants ; and the plaintiffs jointly; and in the plaintiff and both the defendants, jointly.

Upon trial of the cause by a jury in the court below the plaintiff introduced in evidence the following article of agreement, to wit:

" This agreement made between Wm. M. Gillett, on the one part, and James Treganza, on the other, I, William M. Gillett, do bargain and sell to James Treganza, the right of digging for lead ore on a certain range, it being a sheet dipping south, and running east and west, for the sum of five hundred dollars, the receipt whereof is hereby acknowledged, granting the said Treganza privilege of following his sheet or crevice in whatever direction it may run, on the south half of the north-west quarter of section thirty three, in town one, range one, north of the fourth principal meridian, I, James Treganza, do give to the said William M. Gillett, all my right and interest in said ground, save the privilege of following my crevice a sufficient thickness for the purpose of digging and making said crevice. Under this agreement we subscribe our names this third day of February, 1851.

WM. M. GILLETT,

JAMES TREGANZA."

Upon the evidence on both sides being closed, the circuit judge charged the jury, among other things, that they must be satisfied from the evidence that the mineral in question was the property of the plaintiff, and that he was entitled to the immediate possession thereof when this action was commenced; that they must be satisfied that it was dug out of ground belonging to the plaintiff, to which he had the right of possession. Also, he charged, that the written instrument read in evidence, was a conveyance of an interest in realty of which it purports to convey, and that if they found that the mineral in question came out of the ground conveyed by it to the plaintiff, while the said land was in the possession of the plaintiff, the plaintiff was entitled to a verdict. To which instruction the counsel for the defendant excepted.

The counsel for the defendants then moved the said court to charge the jury, that the contract given in evidence by the plaintiff was a mere grant or sale of a right to dig for ore, but does not convey or give to him any interest or estate in the freehold, or in any mineral in the earth; that therefore he had no title to the mineral in question while it remained in the

Gillett et al. vs. Treganza.

earth, and the defendants having dug and raised it, and thus converted it into personal property, the plaintiff had failed to show any title to the property. Which instruction the court refused to give, and the defendants excepted.

The counsel for the defendants further asked the court to charge the jury that the plaintiff, under said agreement, has not, nor could he have, any right to the possession of any ore which was dug out of the earth by any person other than himself or those acting under him, or by his direction. Which instruction the court refused, and the defendants excepted.

The jury found for the plaintiff, who had judgment; to reverse which judgment the defendants below bring this writ.

*J. H. Knowlton* and *J. A. Sleeper*, for the plaintiffs in error.

The court erred in charging the jury, "that the written instrument read in evidence was a conveyance of an interest in realty of which it purports to convey, and that if they found that the mineral in question came out of the ground conveyed by it to the plaintiff while the said land was in the possession of the plaintiff, the plaintiff was entitled to a verdict." This is very singular law to maintain replevin on, especially under the issues in the case. 4 Kent Com., 450, 451 ; Rev. Stat., ch. 59, §§ 1, 3, 29, 30, also § 8. The court erred in refusing the instructions asked for by the defendants—" that the written contract given in evidence by the plaintiff, is a mere grant or sale of a right to dig for ore, but does not convey or give to him any interest or estate in the freehold, nor in any mineral in the earth ; that therefore he had no title to the mineral in question while it remained in the earth, and that the defendants having dug it and raised it, and thus converted it into personal property, the plaintiff has failed to show any title to the property." *Ecker vs. Moore*, 2 Chand., 92. The court erred also in refusing to charge the jury, as requested by the defendants, " that the plaintiff, under said written agreement, has not, nor could he have any right to the possession of any ore which was dug out of the earth by any person other than himself or those acting under him by his direction." This instruction is

good law, unless it can be maintained that the title to land in this state can be acquired without an instrument under seal. The mineral in the earth was a part of the realty.

*J. Allen Barber*, *J. T. Mills*, and *Charles Dunn*, for defendants in error.

*By the Court*, COLE, J. Quite a number of points have been made upon the briefs of counsel in this case, as to alleged erroneous rulings of the circuit court, upon questions of practice and as to the admission of testimony on the trial; but in the present disposition of the case, we shall confine ourselves exclusively to a consideration of such exceptions as were taken to the refusal of the court to give the instructions asked for by the defendants below and plaintiffs here, and also the exceptions taken to the instructions which were given to the jury by the circuit court.

The counsel for the defendants requested the court to charge the jury: That the contract given in evidence by the plaintiff is a mere grant or sale of a right to dig for ore; but does not convey or give to him any interest or estate in the freehold, nor in any mineral in the earth; that therefore he had no title to the mineral in question while it remained in the earth, and that the defendant having dug it and raised it, and thus converted it into personal property, the plaintiff has failed to show any title to the property. That the plaintiff, under the agreement, has not, nor could he have, any right to the possession of any ore which was dug out of the earth by any person other than himself, or those acting under his direction.

That this was an action for the wrongful taking of the property; that the evidence did not show that the defendants had wrongfully taken the property, and therefore the plaintiff was not entitled to recover. These instructions were refused, and exceptions taken. The court charged the jury that they must be satisfied from the evidence that the defendants did take the

property, in order to entitle the plaintiff to recover, and that digging the mineral out of the earth or ground to which the plaintiff was entitled, under the contract given in evidence, and of which plaintiff was in legal possesssion—raising to the surface of the ground, converted it into personal property; and that exercising acts of ownership over it while it lay around the shaft, after it was raised to the surface, would be evidence of a wrongful taking; which they might take into consideration in their deliberation upon that question. To this charge there was an exception.

This was an action of replevin in the *cepit*, for the wrongful taking of a certain quantity of lead ore from a range of mineral ground upon the premises of Gillett. The plea was the general issue, and several special pleas, alleging that the title to the mineral was in the defendants, and in the defendants and plaintiff. It appears that the mineral in controversy was dug and raised to the surface by the defendants from the ground which the plaintiff contended he had the sole and exclusive right and privilege to mine upon, according to a written agreement not under seal, entered into between him and Gillett, the owner of the land. By the terms of this agreement, Gillett bargained and sold to Treganza the right of digging for lead ore on a certain range, it being, in the language of the instrument, a sheet dipping south and running east and west, for the sum of five hundred dollars, granting unto Treganza the privilege of following his sheet or crevice in whatever direction it might run, on the south half of the north-west quarter of section thirty-three, town one, range one north; and Treganza gave Gillett all his right and interest in the ground, save the privilege of following his crevice a sufficient thickness for the purpose of digging and working the crevice.

It is very evident that to support this action it was necessary for the plaintiff to prove that at the time of the caption he had the general or a special property in the mineral taken and the right of immediate and exclusive possesssion. 1 Ch., 162, *et seq.* and cases cited with the notes.

If the general property in this mineral belonged to the

plaintiff, it was because the mineral was bargained and sold to him by the terms of the agreement to which we have just referred. Assuming therefore that the mineral in dispute was broken and taken by the defendants from a crevice or mineral range embraced within the limits of the range mentioned in the agreement, the right of digging upon which had been sold to the plaintiffs, and we are then to ascertain and determine from the language of the agreement what right, interest or property was conveyed by it to Treganza. Can we say that by this agreement Gillett intended to bargain, sell, and convey unto Treganza the absolute property in the mineral unsevered from the land, whether held together with, or separately from, the property in the land, such as the law terms a corporeal hereditament, as distinguished from the mere right to work, and *search for*, them, which is an incorporeal hereditament? Co. Litt., 4 b.; Collier Law of Mines, p. 1. The purport of this agreement is not to bargain and sell the land, or the metals, or the mineral therein comprised. An estate in mines may be created and pass by demise or grant as fully as an estate in land. See the case of *Doe vs. Wood*, 2 B. and A. 724; *Normy* vs. *Rowe*, 19 Ves., 143; *Seaman* vs. *Vaudrey*, 16 Id., 389. But the plain object and intent of this agreement appears to be, not to create a property or estate in the land, not to sell the mines or mineral unsevered therein, but to sell a right, liberty, license and privilege to work, mine, and search for, lead ore, upon the range therein described. " The " power of raising minerals may be alienated, either by such " a conveyance as confers an estate in them, whether freehold " or chattel in its quantity, or by such as merely confers a " right to dig, importing no property in them until severed " from the soil." Coll. Law of Miners, 6; Black. Com., Vol. 2, p. 121. Instead, therefore, of parting with, granting and conveying all the mines and lead ore that were then existing within the land, the words of the agreement import nothing more than a right or license, or privilege, to search and get these minerals. Bargains and sells, *" the right of digging for lead ore,"* is the language of the instrument. Can we con-

construe this into a grant and sale of the minerals themselves? This right of digging undoubtedly carries with it a right of property in the mineral dug and obtained. But the mineral in this case was not dug and obtained by the plaintiff. Unless he took it by the legal effect and operation of the agreement before it was discovered and broken from the earth, he cannot be said to have had the possession of it, or to have had that general property in it which would enable him to maintain replevin in the *cepit* against the defendants.

Probably under our present practice a complaint setting forth the special circumstances of the case, would be all that would be necessary to enable the court to protect the interests of all parties under such agreements. But this action was commenced and the pleadings made up before the code took effect and while the distinctions in actions at law and equity were recognized and strictly adhered to. Observing those distinctions, we are unable to see upon what principle it can be maintained that Treganza had such an interest in the mineral in dispute that he could recover it in replevin in the *cepit*. The agreement, as already observed, gave him the right or license to dig for mineral, (a license probably irrevocable, on account of carrying an interest if he prosecuted his mining diligently,) but it did not purport to grant, bargain and sell the mines or minerals as contradistinguished from the right to search for them.

It follows from the view which we have taken of the case, that the circuit court erred in not giving the instructions asked for by the defendant below.

The judgment of the circuit court is therefore reversed and a new trial ordered.