[S. F. No. 1951.   Department Two.—September 30, 1903.]

LIZZIE LANGENBECK et al., Appellants, v. MRS. M. J. LOUIS and JULIUS LOUIS, Respondents.

DEED OF GIFT—EXECUTION BY MARK—ATTESTATION BY NOTARY—PRIMA FACIE EVIDENCE.—A deed of gift purporting to have been executed by a mother to her daughter, by her mark, which was attested, in accordance with the requirements of section 14 of the Civil Code, by the notary who signed her name to the mark, and who took her acknowledgment, and which was admitted in evidence without objection, must be taken as *prima facie* evidence of the facts stated by the notary both in the attestation of the mark, and in the certificate of acknowledgment.

ID.—ACTION TO SET ASIDE DEED—FRAUD—IMPEACHMENT OF NOTARY'S CERTIFICATE—BURDEN OF PROOF—SUPPORT OF FINDINGS.—In an action to set aside such deed of gift for alleged fraud, the burden of impeaching the notary's certificate is upon the plaintiffs who claim it to be false and fraudulent. Where there is evidence sufficient to show that the transaction was open and free from concealment, that the charge of fraud was not sustained, and that all concerned, including the notary, acted in good faith, and, though the evidence is substantially conflicting upon the question of the consciousness of the mother when the deed was made, where there is sufficient evidence to sustain the findings that she was then conscious, and executed and acknowledged the deed, this court will not disturb the conclusion of the court below.

ID.—EVIDENCE—OPINION OF PHYSICIAN.—It was not proper to ask the physician who attended the grantor in her last illness, for his abstract opinion whether she was competent to transfer any property at a time when he was not present. That question was to be determined from the facts, and not from the mere abstract opinion of any witness, medical or otherwise.

ID.—STRIKING OUT ANSWER AS NOT RESPONSIVE—ERROR NOT SHOWN—HARMLESS RULING.—Where a part of the testimony of the physician as to what he observed as to the unconsciousness of the grantor, was stricken out as not responsive to the question, and the question does not appear in the record, error is not shown. The order striking it out was harmless, where the witness testified fully that the deceased was unconscious when he last saw her three hours before the deed was signed.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. James M. Troutt, Judge.

The facts are stated in the opinion.

James A. Devoto, Devoto & De Martini, and Devoto & Richardson, for Appellants.

The evidence overwhelmingly proves that Mrs. Cord was unconscious when the deed was made, and did not, and could not, request the notary to sign her name to the mark, and did not, and could not, acknowledge the execution. This overcomes the certificate of the notary, which is only *prima facie*, and not conclusive evidence of the facts recited. (*Le Mesnager* v. *Hamilton*, 101 Cal. 536;[1] *Moore* v. *Hopkins*, 83 Cal. 272;[2] *Banning* v. *Banning*, 80 Cal. 271;[3] Code Civ. Proc., sec. 1948.) There was not, and could not be, a delivery of the deed by the grantor to the grantee, and it was not therefore effective. (Civ. Code, sec. 1054; *Whitney* v. *American Ins. Co.*, 127 Cal. 467-469; *Black* v. *Sharkey*, 104 Cal. 279; Devlin on Deeds, secs. 294, 295.) The court erred in excluding the evidence of the physician as to the mental competency of Mrs. Cord to transfer her property. (*McClintock* v. *Curd*, 32 Mo. 411; *Pinney's Will*, 27 Minn. 280; *Woodcock* v. *Johnson*, 36 Minn. 217; *Melendy* v. *Spaulding*, 54 Vt. 517.) The court erred in striking out the testimony of the physician that she was "evidently unconscious." (*People* v. *Sanford*, 43 Cal. 29; *People* v. *Wreden*, 59 Cal. 394; *Estate of Dalrymple*, 67 Cal. 446.)

A. Ruef, for Respondents.

The certificate of the notary was *prima facie* evidence of the facts stated, and therefore tends to support the findings. (Code Civ. Proc., sec. 1948; *Banning* v. *Banning*, 80 Cal. 271;[3] *Moore* v. *Hopkins*, 83 Cal. 272;[2] *Le Mesnager* v. *Hamilton*, 101 Cal. 556.[1]) The certificate is supported by other evidence. Conflicting evidence does not call for reversal where there is sufficient evidence to justify the decision. (*Chico Bridge Co.* v. *Sacramento Tr. Co.*, 123 Cal 178; *Stockton Bank* v. *Staples*, 98 Cal. 189; *Canning* v. *Central Pacific R. R.*, 50 Cal. 166.) Experts cannot usurp the province of the court, and their opinion on capacity or incapacity to dispose of prop-

[1] 40 Am. St. Rep. 81.          [3] 13 Am. St. Rep. 156.
[2] 17 Am. St. Rep. 248.

erty is incompetent. (2 Jones on Evidence, sec. 374; *Estate of Redfield,* 116 Cal. 637.) The court may always strike out any part of an answer which is not responsive. (Jones on Evidence, sec. 814.) No error affirmatively appears, the question not being given. (*Clark* v. *Sawyer,* 48 Cal. 133; *Campbell* v. *Wells,* 77 Cal. 250.)

CHIPMAN, C.—This is an action to annul and set aside as void a deed of gift executed by Annie Maria Cord, on the day of her death, to her daughter, Margaret Jessie Cord, now the wife of Julius Louis, defendants in the action. The deed was dated December 9, 1893, and the complaint was filed about June 17, 1895, the exact date not appearing. It was alleged in the complaint that at the time this deed purports to have been executed deceased ''was and for some hours previous thereto had been in the throes of death, and from which she never rallied; that her mind was in such condition that she did not recognize those about her, or realize or understand what was going on about her, . . . or understand the nature, purport, effects, or consequences of her acts.'' It is also alleged that deceased ''did not sign her name to said deed, or make her cross or mark as and for her signature, or authorize any person to do so by word or sign, and said plaintiffs allege that the said Charles D. Wheat (the notary certifying to the acknowledgment), without any authority or request from said Annie Maria Cord, signed her name and made her cross or mark to said deed,'' and that she ''never had any knowledge of the contents of said deed, or knew or understood its nature or effect, and defendant Margaret J. Louis took an unfair advantage of her weakness of mind.'' The findings of the court negative these allegations, except that it is found that Mrs. Cord was ''sick and ill'' at the time the deed was executed, but it is found that she ''made, signed, executed, acknowledged, and delivered to defendant Margaret J. Louis,'' the deed in question. Judgment passed for defendants accordingly. Plaintiffs appealed from the judgment and from the order denying their motion for a new trial.

1. It appeared from the evidence that Mrs. Cord was af-

flicted with malignant cancer, and had been under treatment several days prior to her death, which occurred December 9, 1893. The evidence shows that all the children of deceased were present except plaintiff Mrs. Langenbeck, and expressed the wish that the property of their mother should be given to her daughter, Maggie Cord, who was then the only one unmarried. The property had a value of five or six hundred dollars. It was at the suggestion of Mrs. Garrity, an old friend of the family, who was present from 9 A. M. until 10 P. M. of December 9th, at which latter hour Mrs. Cord died, that a notary was sent for to prepare a deed and take the acknowledgment of Mrs. Cord. Mrs. Garrity testified that the deed was prepared after the notary came; others thought he brought it already prepared. Rivers, one of the witnesses to the signature of Mrs. Cord, was dead at the trial, and respondents state in their brief that Wheat, the other witness, was also dead. The deed was admitted in evidence, without objection,

and purports to be signed "ANNIE MARIA $\overset{\text{her}}{\text{X}}$ CORD."
$\qquad\qquad\qquad\qquad\qquad\qquad\quad$ mark.

Immediately under the signature appears the following:—

"Signed, sealed and delivered in the presence of Louis L. Rivers."

"Annie Maria Cord, whose name and whose mark is subscribed to the foregoing instrument, cannot write. She made her said mark and her said name was written near it by me, at her request, and in her presence, and my name is hereto subscribed as a witness to said mark and signature. CHAS. D. WHEAT."

Then follows the certificate of the notary, Charles D. Wheat, certifying that "personally appeared Annie Maria Cord, a widow, known to me to be the person described in, whose name is subscribed to, and who executed the annexed instrument, and she duly acknowledged to me that she executed the same." The signature of Mrs. Cord to the deed followed the requirement of section 14 of the Civil Code, and the certificate of acknowledgment became *prima facie* evidence of the execution of the instrument, though not conclusive of the facts therein recited. (*Banning* v. *Banning,* 80 Cal. 271;[1] *Le Mesnager* v. *Hamilton,* 101 Cal. 532.[2]) The statement of

---

[1] 13 Am. St. Rep. 156.          [2] 40 Am. St. Rep. 81.

the notary as to the grantor making her mark, and as to his having written her name near by it, is in accordance with the section of the code above cited, and as the instrument was admitted without objection, must be accepted as evidence of the facts stated. It was admitted that both the notary's and Rivers's signatures were genuine and were written at the time. The evidence satisfactorily established the fact, and was uncontradicted, that the deed met the approval of all of the children of deceased except Mrs. Langenbeck, who was not present, and there is no evidence that she was dissatisfied with it or was ignorant of its execution. She was not called as a witness. The transaction was open and free from concealment, and the charge of fraud and of taking undue advantage of the condition of her mother by her daughter, her grantee, was not sustained. The plaintiffs who testified admitted that they were entirely satisfied at the time, and made no objection until about the time the suit was brought, which was eighteen months later, upon learning that the grantee, who had meanwhile married, had conveyed the lot to her husband, whereupon they immediately and for that reason alone, began the suit. The only remaining disputed question of fact in the case related to Mrs. Cord's knowledge of the contents of the deed, and comprehension of its nature or effect. The evidence is conflicting as to the condition of consciousness or unconsciousness of deceased when the deed was executed. We do not think it necessary to state the evidence pro and con of this feature of the case. In passing upon the question of consciousness or unconsciousness of deceased, the court may have disbelieved the opinions of plaintiffs' witnesses from the general tenor of their testimony, or from their manner, or for the reason that their testimony was inconsistent with their admissions that they desired their sister to have the property, and because they expressed no dissent for so long a time after they had been witnesses of and requested the conveyance to their sister. The court may have regarded it as improbable that they would impose upon their mother if unconscious, and obtain from her something she did not want to do or did not understand she was doing. Under the circumstances disclosed, the entire good faith of those concerned, including the notary, cannot be

questioned, and this fact adds to the weight of the evidence found in the notary's certificate. The burden of impeaching the certificate was upon the parties claiming that it was false, fraudulent, or not in accordance with the truth. We cannot say that the court was not warranted in finding that plaintiffs did not successfully sustain that burden. There is evidence sufficient to support the findings, and we cannot say that the court was called upon under all the circumstances to discredit this evidence and accept that of the plaintiffs. The numerical preponderance of witnesses may have supported plaintiffs' contention, and might have justified a different conclusion by the court. But their credibility, as well as the weight of their testimony, had to be determined by the trial court, and we can find no ground for disturbing its conclusion.

2. But two alleged errors of law are noticed in appellants' brief. It is claimed that the court erred in sustaining defendants' objection to the question put by plaintiffs to Dr. Mervy: "Did you think she was in a condition at twelve o'clock on the 9th of December to transfer any property and to realize the nature of or understand any instrument she might have signed, or that was attempted to have her sign?" The witness was permitted to testify as to the physical and mental condition of his patient, and he said she was unconscious when he saw her. It was not proper to ask the witness his abstract opinion whether she was competent to transfer any property. That question must be determined from the facts, and not from the mere abstract opinion of any witness, medical or otherwise. (See *In re Redfield,* 116 Cal. 637.) Furthermore, the question called for an opinion as to what she might have been competent to do three hours later, and when the witness was not present. We do not think the court erred in its ruling. The witness testified as follows: "She was unconscious at the time and reclining on her side, evidently unconscious." Defendants moved to strike out the words "evidently unconscious," as not responsive to the question and as incompetent testimony. The question put to the witness does not appear, and the answer may not have been responsive, and hence error is not shown. (*Clark* v. *Sawyer,* 48 Cal. 133; *Campbell* v. *Wallis,* 77 Cal. 250.) Dr. Mervy tes-

tified fully as to the condition of Mrs. Cord, and several times said she was in an unconscious condition. The ruling was harmless if error.

The judgment and order should be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Lorigan, J., Henshaw, J.