[Civ. No. 7024. First Appellate District, Division One.—June 27, 1930.]

J. J. RYAN, Appellant, v. BANK OF ITALY NATIONAL TRUST & SAVINGS ASSOCIATION (a Corporation), Respondent.

Tobin & Tobin and Geo. A. Clough for Appellant.

Louis Ferrari and J. J. Posner for Respondent.

THE COURT.—An action brought by the assignee of City Title Insurance Company, a corporation, hereinafter called the company, to recover from defendant bank the amount

of a check drawn by the company upon the bank and paid by the latter, it being alleged that the name of the payee indorsed thereon was a forgery. The facts are as follows:

On December 8, 1926, W. G. Miller, a real estate broker doing business under the name of W. G. Miller Realty Company, through his agent, H. T. Hunt, applied to the company for a policy of title insurance upon two parcels of real property in San Francisco. The company caused the records to be examined and on December 9, 1926, issued its preliminary report to Miller showing the title to be vested in Mary Smith, an unmarried woman, subject to certain bankruptcy proceedings in the matter of Mary Smith doing business under the name of H. L. Smith, a judgment against a person of the same name and an insanity proceeding in which the commitment of one Mary Smith to the asylum at Napa was shown. The company demanded and was furnished affidavits purporting to be signed by Mary Smith and sworn to before a notary public, stating that affiant was not a party to the bankruptcy proceedings, was not the judgment debtor mentioned and had never been adjudged insane or committed to the asylum. No affidavit that the person who signed the above affidavit had executed the deeds hereinafter mentioned and was the owner of the property was required by the company or furnished. Later Miller delivered to the company two deeds, each purporting to be a deed from Mary Smith conveying the property to A. E. Ingram, and to each was attached the certificate of a notary public in the usual form certifying that the instruments were acknowledged before him by Mary Smith, a single woman. At the same time Miller delivered to the company two grant deeds of the same property purporting to have been executed and acknowledged by Ingram and in which Nellie Bernhard and Helen Stern were named as grantees. The company was instructed to deliver the deeds to the grantees upon the payment of the purchase price, namely, $8,500, from which amount the company was directed to pay the sum of $7,187.50 to Mary Smith. The purchase price was paid by the grantees to the company. The deeds were delivered and recorded and a check for $7,187.50, payable to the order of Mary Smith, was drawn by the company upon the bank with which it had funds upon deposit and delivered to Miller. The latter delivered

the check to one R. V. McGrew of Los Angeles, from whom he had received the deeds and affidavits mentioned. The names Mary Smith and Heartwell Holding Corporation by R. V. McGrew were indorsed on the check upon which there also appears the subsequent indorsements of the California Bank and the Bank of California. The check was afterward presented to defendant bank and paid and the amount charged to the account of the company.

The court found that the check was indorsed by the Mary Smith who executed the deeds and that any loss suffered by the company was proximately caused by its negligence. Judgment was accordingly entered for defendant, and plaintiff, who has appealed, contends that the findings are not sustained by the evidence, and that the court erred in excluding a statement signed by McGrew. It is admitted that the deeds were not executed or the check indorsed by the Mary Smith who was the owner of the property. It was testified, however, by a handwriting expert, that the name Mary Smith signed to the deeds and affidavits, and indorsed upon the check, was written by the same person, and the notary public in his certificates of acknowledgment attached to the deeds mentioned certified that Mary Smith, an unmarried woman, known to him to be the person whose name was subscribed thereto, personally appeared before him and acknowledged their execution. The statute expressly forbids the taking of an acknowledgment unless the notary knows or has satisfactory evidence that the person making such acknowledgment is the individual who is described in and who executed the instrument. (Civ. Code, sec. 1185.) ▮ The purpose of the certificate of acknowledgment is to establish the identity of such person and the genuineness of the signature attached to the instrument (*Homan* v. *Wayer*, 9 Cal. App. 123 [98 Pac. 80]; *Ross* v. *New Amsterdam Casualty Co.*, 56 Cal. App. 254 [205 Pac. 43]), and the certificate is *prima facie* evidence of the truth of the facts stated therein. (1 Cal. Jur., Acknowledgments, sec. 32, p. 268; *French Bank* v. *Beard*, 54 Cal. 480; *Baldwin* v. *Bornheiber*, 48 Cal. 433; *Banning* v. *Banning*, 80 Cal. 271 [13 Am. St. Rep. 156, 22 Pac. 210]; *Overacre* v. *Blake*, 82 Cal. 77 [22 Pac. 979]; *Langenbeck* v. *Louis*, 140 Cal. 406 [73 Pac. 1086].)

█ It is to be presumed that the duties of the notary were regularly performed. (Code Civ. Proc., sec. 1963, subd. 15; *Pardee* v. *Schanzlin,* 3 Cal. App. 597 [86 Pac. 812].) The facts certified by him, together with the testimony of the handwriting expert were sufficient to support the conclusion that the deeds in question were executed by a person named Mary Smith and the finding that this person also indorsed the check. █ A bank is authorized to pay only to the person designated by the depositor, and it cannot charge against the depositor's account an amount paid by it on a forged indorsement of the depositor's check. (*Hatton* v. *Holmes,* 97 Cal. 208 [31 Pac. 1131]; *Garthwaite* v. *Tulare Bank,* 134 Cal. 237 [66 Pac. 326]; *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, 38 [41 L. R. A. (N. S.) 529, 124 Pac. 704].) █ But according to the majority of cases, where a check is delivered to an impostor as payee in the belief that he is the person to whom or upon whose indorsement it will be paid, the indorsement by such impostor is not a forgery, for the reason that the drawer of the check intends it to be indorsed by the person to whom he delivers it, and the drawee bank is protected. (*United States Bank* v. *National Exch. Bank,* 45 Fed. 163; *United States* v. *Chase Nat. Bank,* 241 Fed. 535, 537; *Sherman* v. *Corn Exch. Bank,* 91 App. Div. 84 [86 N. Y. Supp. 341]; *McHenry* v. *Old Citizens Nat. Bank,* 85 Ohio St. 203 [38 L. R. A. (N. S.) 1111, note, 97 N. E. 395]; *Hoffman* v. *American etc. Nat. Bank,* 2 Neb. Unof. 217 [96 N. W. 112]; *Robertson* v. *Coleman,* 141 Mass. 231 [55 Am. Rep. 471, 4 N. E. 619]; *Land etc. Trust Co.* v. *Northwestern Nat. Bank,* 196 Pa. 230 [79 Am. St. Rep. 717, 50 L. R. A. 75, note, 46 Atl. 420]; *Montgomery Garage Co.* v. *Manufacturers Liability etc. Co.,* 94 N. J. L. 152 [22 A. L. R. 1224, note, 109 Atl. 296]; *Metzger* v. *Franklin Bank,* 119 Ind. 359 [21 N. E. 973]; *Uriola* v. *Twin Falls Bank & Trust Co.,* 37 Idaho, 332 [215 Pac. 1080].) This rule is opposed by *Tolman* v. *American Nat. Bank,* 22 R. I. 462 [84 Am. St. Rep. 850, 52 L. R. A. 877, 48 Atl. 480], but the weight of authority seems to be decidedly in favor of the rule, and upon its facts the case of *Bank of Italy* v. *First Bank of Kern,* 69 Cal. App. 319 [231 Pac. 41], is not a decision to the contrary. █ Appellant contends, however, that the

present case is within the rule that where the impostor, upon whose indorsement the check is paid, obtains the same from the drawer by representing himself to be the agent of the payee and not the payee himself, such indorsement is a forgery and payment by the drawee is unauthorized. (*Hatton* v. *Holmes, supra; Bennett* v. *First Nat. Bank etc.,* 47 Cal. App. 450 [190 Pac. 831].) This contention cannot be sustained, as the evidence sufficiently showed that Miller and McGrew were the agents of the Mary Smith who executed the deeds and indorsed the check. Moreover, it was the intention that the check should be delivered to and indorsed by the person who executed the deeds, the officers of the company believing that person to be the owner of the property. ▮ Nor is there any distinction in principle between cases where the check is delivered to the impostor in person and where such delivery is through an intermediary, if the drawer causes it to be delivered to him in the belief that he is the person to whom or upon whose indorsement it will be paid. (*Emporia Nat. Bank* v. *Shotwell,* 35 Kan. 360 [57 Am. Rep. 171, 11 Pac. 141]; *States* v. *First Nat. Bank,* 203 Pa. 69 [52 Atl. 13]; *Hartford* v. *Greenwich Bank,* 157 App. Div. 448 [142 N. Y. Supp. 387]; 215 N. Y. 726 [109 N. E. 1077]; *Uriola* v. *Twin Falls etc. Bank & Trust Co., supra.*)

▮ On the issues of negligence the circumstances were such as to make the question properly one for the jury or for the court sitting as a jury (*S. Weisberger Co.* v. *Barberton Sav. Bank, etc.,* 84 Ohio St. 21 [34 L. R. A. (N. S.) 1100, 95 N. E. 379]; *Missouri Pac. Ry. Co.* v. *M. M. Cohn Co.,* 164 Ark. 335 [261 S. W. 895]; *Land Title etc. Co.* v. *Northwestern Nat. Bank, supra*), and we cannot say that the finding of the court thereon is unsupported. ▮ The plaintiff offered a purported confession by McGrew and also an indictment returned by the grand jury of the city and county of San Francisco charging him with a felony, to wit, the forgery of the deeds in question. This evidence under the hearsay rule was properly rejected.

The findings of the trial court are fully sustained, and no error being shown, the judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 26, 1930, and a peti-

tion by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 25, 1930.